DECISION
The arbitration decision at issue involves two (2) grievances filed by the Lincoln Teachers Association, Local Union 1461, AFT, AFL-CIO ("Union") on behalf of Margaret McGuire ("McGuire") and Mary Jean Mahoney ("Mahoney") respectively. Both grievances involved a request for unpaid leave of absence for the 2000-2001 school year and the Superintendent's denial of the same. The grievances were identical. Both stated that the nature of the grievance was a "violation of the collective bargaining agreement including but not necessarily limited to Article III — Grievance Procedure, and Article IX — Leaves of Absence, Section 4(c)." Mahoney's stated reason for requesting leave was that she was taking a job closer to home. McGuire's reason was also to be closer to home.
On August 28, 2000, the Superintendent denied both requests for leave. In his denials, the Superintendent cited the express contract language found in Article IX, Section 4(c) ? "Other leaves without pay may be granted by the Superintendent or his/her designee."
At an arbitration hearing held on September 11, 2001, the Superintendent testified that during his tenure, he has not granted any unpaid leaves of absence to allow teachers to accept other employment. He testified further that neither he nor the School Committee supported granting unpaid leaves of absence to allow teachers to pursue other teaching or employment opportunities. The Superintendent stated that the contract language allows him to use his discretion in granting or denying unpaid leaves.
The Union took the position that the District had a past practice of granting leaves similar to those requested in this matter. They cited two previous arbitration decisions dealing with requests to renew unpaid leaves of absence. The Union argued that this was evidence that a practice existed between the parties and that when the Superintendent receives a request for unpaid leave of absence, he has no discretion and must grant it. The Union acknowledged that the contract language specifically grants the Superintendent discretion in his decision.
At the close of the arbitration, the Union elected to present a closing argument while the Committee chose to submit a Memorandum of Law.
The Arbitrator issued his written decision and award on May 8, 2002 ("Decision"). The Arbitrator found that a past practice existed between the parties (Decision at pg. 6), and that, although the current Superintendent and School Committee did not grant leaves of absence under these circumstances, they had not informed the Union of their intention to no longer be bound by the past practice and therefore had to grant the requested leaves to McGuire and Mahoney. (Decision at pgs. 7-8.)
On or about May 17, 2002, the Union filed a Motion in the Nature of Petition to Confirm and Enforce Arbitration Award. Subsequently, the Committee filed its Objection thereto. The Committee objected on the basis that the Decision is in clear violation of R.I.G.L. § 28-9-18
and should be vacated. The Committee also filed a Motion to Vacate the Arbitration Award.
 Standard of Review
When reviewing an arbitration award, the general rule is that "`[a]bsent a manifest disregard of a contractual provision or a completely irrational result, the award will be upheld.' However, notwithstanding this circumscribed standard of review, an arbitration award will be vacated if, for example . . . the arbitrator has otherwise exceeded his or her powers." Rhode Island Brotherhood of CorrectionalOfficers v. State of Rhode Island Dep't of Corrections, 707 A.2d 1229, 1234 (R.I. 1998) (internal citation omitted); see also R.I.G.L. §28-9-18, entitled, "Grounds for vacating award."
 "An arbitrator may exceed his or her powers in one of several ways. First, if the arbitration award does not `draw its essence' from the collective-bargaining contract or is not based upon a `passably plausible' interpretation thereof, a court may determine that the arbitrator manifestly disregarded a contractual provision or reached an irrational result and thereby exceed his or her authority. Second, an arbitrator may exceed his or her powers by interpreting a CBA in such a way that it contravenes state law or other public policies that are not subject to alteration by arbitration. In these instances we do not apply the more deferential standard accorded to an arbitrator's interpretation of the CBA on its merits; instead, we decide the question of arbitrability de novo. Our heightened level of review in such cases is predicated on the possibility that an arbitrator might be called upon to consider and to interpret a CBA in such a way that it would alter existing statutory policies or override other supervening state law governing the public-employment sector. Third, an arbitrator is powerless to arbitrate that which is not arbitrable in the first place." Rhode Island Brotherhood of Correctional Officers, 707 A.2d at 1234 (citations omitted).
 Discussion
The statute applicable to this CBA dispute is as follows:
 "§ 28-9-27. Use of past practices in arbitrationhearings
 (a) An arbitrator has the authority to consider the existence of a past practice that may exist between the parties to a collective bargaining agreement only under the following circumstances:
 (1) The collective bargaining agreement does not contain an express provision that is the subject of the grievance; or
 (2) The collective bargaining agreement contains a provision that is unclear and ambiguous.
 (b) A party claiming the existence of a past practice is required to prove by clear and convincing evidence that the practice:
 (1) Is unequivocal;
 (2) Has been clearly enunciated and acted upon;
 (3) Is readily ascertainable;
 (4) Has been in existence for a substantial period of time; and
 (5) Has been accepted by representatives of the parties who possess the actual authority to accept the practice.
 (c) A past practice that may exist between the parties to a collective bargaining agreement may not override any contrary provision of an existing collective bargaining agreement, statute, or ordinance.
 (d) A past practice that may exist between the parties to a collective bargaining agreement may not override any contrary provision of any written rule, regulation, or policy that has been promulgated, adopted, and published pursuant to either the Administrative Procedures Act, chapter 35 of title 42, or promulgated and published by the appropriate governing entity in a city or town.
 (e) Any party to a collective bargaining agreement may provide written notice to the other party that it no longer intends to be bound by a past practice. The notification must describe the past practice and set forth the effective date of the termination of the practice. Thirty (30) days following the notification neither party is obligated to follow the practice."
The arbitrator stated in his opinion that under § 28-9-27 he had the authority to consider the past practice in this case. However, the statute only confers such authority if "[t]he collective bargaining agreement does not contain an express provision that is the subject of the grievance," R.I.G.L. § 28-9-27(a)(1), or that "[t]he collective bargaining agreement contains a provision that is unclear and ambiguous," R.I.G.L. § 28-9-27(a)(2). Here, the collective bargaining agreement contains an express provision, Section 4(c), which is both clear and unambiguous. Section (c) states that "leaves without pay may be granted by the Superintendent or his/her designee." This provision gives the Superintendent the authority to use his/her discretion when reviewing a request for extended leave. In considering past practices, the arbitrator exceeded his powers in such a way that it contravened state law.
 Conclusion
Accordingly, the Plaintiff's Motion to Confirm and Enforce Arbitration Award is denied. Moreover, the Defendant's Motion to Vacate the Arbitration Award is granted. Said award is hereby vacated.